IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 14-cv-02784-RPM

SAN JUAN CITIZENS ALLIANCE, INC.,

     Plaintiff,

v.

BUREAU OF LAND MANAGEMENT,

     Defendant.

---

## ORDERS ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

---

     San Juan Citizens Alliance, Inc. ("SJCA") is a Colorado non-profit corporation acting as a citizens advisory group with an emphasis on protecting the natural environment in the Four Corners Area.[1]  It has offices in Durango, Colorado and Farmington, New Mexico.  To obtain information necessary to perform its mission, SJCA frequently uses the Freedom of Information Act, 5 U.S.C. § 522 ("FOIA").

     The Farmington Field Office ("FFO") of the Bureau of Land Management ("BLM") has responsibility for management of public lands, including a multiple use area known as the Glade Run Recreation Area ("GRRA" or "Glade"), being an area of 22,000 acres along the northern boundary of Farmington surrounding the communities of Flora Vista and Aztec to the west and

---

[1]The Four Corners area is where the states of Colorado, New Mexico, Utah and Arizona meet.

east, respectively.  Despite its name the Glade contains oil and gas production and active grazing allotments in addition to recreational uses for motorized and non-motorized activities.  It is popular with those who do vehicular "rock crawling" and is the location of mountain biking events.  Large power lines cross the area.

Over time SJCA and the BLM Farmington office have developed a fractious relationship becoming adversarial.

This civil action brought under the FOIA brings that relationship into this court.  The antagonism is asserted boldly in the second claim for relief in the Amended Complaint, filed August 20, 2015 (Doc. 35).  SJCA alleges that the FFO has engaged in a pattern and practice of illegally withholding agency records from SJCA's multiple FOIA requests and routinely failed to commit adequate resources to make full, timely and lawful responses to those requests.  The relief requested is a reference to Special Counsel for an investigation of the office pursuant to 5 U.S.C. § 552(a)(4)(F).  Proceedings on that claim have been stayed to permit adjudication of the First Claim for Relief seeking resolution of three FOIA requests made in 2014.

The defendant moved for summary judgment on that claim on April 11, 2017, based on a 48 page statement of undisputed facts and multiple exhibits and declarations of six BLM employees explaining the searches made and production of documents in response to those requests.  BLM's position is that it has complied with the law's requirements in a reasonable manner given the failure of SJCA to communicate adequately what records were being sought and the breadth of those requests.

The plaintiff responded that there were factual disputes and that discovery was necessary to show that the BLM failed to follow an appropriate methodology to comply with these requests

and did not document the searches made, making it impossible to determine whether all relevant agency records have been obtained. The plaintiff also asserts that it has not received records of monitoring and oversight that should have been created and maintained if the FFO had been properly supervising activities in the Glade. In short, SJCA asserts that the defendant's motion cannot be granted because there is no way to determine what was done by whom and when the searches were conducted and there has been no adequate explanation of why no records were found in some categories where they should be expected to exist.

Discovery hearings have been held and some additional documents were produced. On April 26, 2018, SJCA filed a cross-motion for summary judgment (Doc. 89). It included responses to the defendant's statement of facts, included others and submitted additional exhibits.

The relief SJCA requests is an order directing a new and complete records search with directions and a cutoff date.

SJCA has long been critical of management of the Glade. The FFO began developing a Recreation and Travel Plan for the Glade in 2009. Janelle Alleman, an outdoor recreational planner, led development of the Plan. In the course of planning, it became apparent that there was a need to amend the 2003 Farmington Resource Management Plan. The BLM released an Environmental Assessment ("EA") for public comment in February, 2013. It was withdrawn after SJCA pointed out obvious flaws in the analysis, including the use of portions of an analysis made for a trail near Montrose, Colorado.

SJCA submitted a FOIA request for documents related to the Glade in May, 2013. Finding the processing of that response inadequate, it filed a FOIA action in December, 2013, designated as Civil Action No. 13-cv-03403-MSK-KLM.

A settlement agreement was reached as reflected in an undated document describing the BLM's obligation to conduct a search and provide a final response letter. That letter was issued on January 10, 2014, and the case was dismissed with prejudice on January 27, 2014 on the plaintiff's motion. Presumably SJCA was satisfied with the 9,487 pages of agency records it had received.

The FFO released a revised EA on February 6, 2014, with proposed amendments to the RMP and set a 15-day public comment period. SJCA requested additional time. The BLM denied that request.

SJCA then submitted a new FOIA request on February 13, 2014, asking for "copies of the following agency records created or obtained by BLM and [Department of the Interior], as oversight department for preparation of the [Glade Run Recreation Area Resource Management Plan Amendment/Environmental Assessment]":

> 1) All communications and records of communications, including letters, attachments, documents, e-mails, text messages, phone messages, minutes of meetings, etc., involving DOI, and BLM (Farmington and Santa Fe offices) from May 2013 through present.
>
> 2) All indexes, notes, lists, and other agency records that identifies [sic] the agency records contained in the administrative record for the RMPA/EA Travel Management Plan . . . .

(Doc. 72-18, Def.'s Ex. A-1 at BLM_0000847-48). That request further stated:

Please note that this request must be read broadly and seeks all records created, obtained, and/or maintained by or on behalf of DOI and staff, employees, attorneys, agents, etc. concerning the EA prepared by BLM as lead agency. The request seeks all Farmington BLM records pertaining to the GRRA RMPA/EA. Please also include the formal required New Mexico State Office review records that occurred in conjunction with the release of the revised RMPA/EA on February 6, 2014 and the Administrative Record for the project. . . .

(*Id.*)

Expedited processing was requested because these records were thought to be necessary for commenting on the Revised EA/RMP before the deadline of February 21, 2014. Notably this request asked for records from May, 2013, the date of the request that had been resolved by settlement of the prior action.

On the date of its receipt by Eileen Vigil, the BLM's State Records Administrator for New Mexico, in her office in Santa Fe, she sent the request to Debra Yeager, the FFO's FOIA coordinator who assigned it to Alleman who identified 14 employees who had worked on the Plan development and would likely have or know of responsive records. On the same day (February 13), Alleman sent each of those 14 employees an email asking that they search for any "emails, phone messages, notes, meeting minutes, or other forms of communication related to the Glade," and explaining that this request is for "all communications or other documents from May, 2013 to the present." (Doc. 72-21, Def.'s Ex. C-1 at BLM-0007614). Alleman had worked on the response to the May, 2013 request. There is nothing in the record indicating that her selection of 14 employees was because they had done searches pursuant to that request or that she gave any directions beyond what is in her email to them. Alleman requested a response within a week and asked those email recipients to forward her email to others she may have missed. Alleman sent the same request to two persons in the State Office the next day.

No one communicated with SJCA about processing its request until February 21, 2014 when Vigil wrote an acknowledgment of its receipt and informed SJCA that the request did not meet BLM's criteria for expedited processing. She did not question why the beginning date was May, 2013, the date of the request that had just been settled by the dismissal of the prior action.

Apparently impatient that no response had been received, SJCA sent another request on February 19, 2014, describing it as an addendum to the February 13 request, asking for "data associated with information on the following data points in the [Glade Run Recreation Area Resource Management Plan Amendment /EA]:

1.    All surface disturbance by oil and gas activities in the GRRA including well pads, roads, pipelines, central delivery points, compressors, waterlines, electrical lines, and pig launchers. Data on total surface disturbance by all oil and gas activities in the GRRA.

2.    All travel management data (routes, roads, approved right of ways) with data on open, closed and limited travel designations including Off-Highway Vehicle routes. Additionally, data on travel management inventory maps so travel management segment condition/description can be tied to on the map locations.

3.    All data on closed routes, and closed right of ways in the GRRA.

4.    All land health standard determination and sustained yield data for multiple use resources in the GRRA.

5.    All minimization criteria data used for all resources evaluated in the GRRA RMPA/EA.

6.    All monitoring data used by BLM to comply with monitoring responsibilities of the 2003 Resource Management Plan and monitoring reports required annually from 2004-present.

7.    All data concerning archeological resources in the GRRA, including a distribution map of the archeological sites listed in section 3.7 of the RMP/EA by area/location, site type, feature type, alternative boundary and RMZ Zone. In addition, all data concerning National Register of Historic Places eligible, undetermined, or not considered eligible sites. Please also

provide all data on the archeologically "surveyed area" of the GRRA –
i.e., what has been examined on foot to current "Class III" (intensive
inventory) standards. . . .

(Doc. 72-18, Def.'s Ex. A-2 at BLM_0000060-61).  That request further stated, "It is highly

unlikely that the requested records are exempt from disclosure as the request is for records

concerning the GRRA RMPA/EA which SJCA has previously FOIAed." (*Id.*)

The scope of this request, read literally, seems to ask for the entire contents of the FFO as

could be "data associated with information" related to the Amendment.  Item 6 requests

"monitoring data" going back to 2004.

Alleman did not understand this request and sought advice from Dale Wirth, Branch

Chief of the FFO, and Amanda Nisula, the FFO NEPA planner.  To seek clarification, David

Evans, District Manager for the Farmington District, spoke by telephone with Michael Eisenfeld

(SJCA's director) on February 24, explaining that it would take 12 to 14 months to respond to

"monitoring data."  After declining Evans' request to meet, Eisenfeld sent an email to him that

afternoon, summarizing the conversation:

Hi Dave

Thank you for your call today concerning the Glade Run Recreation Area
Freedom of Information Act Requests of February 2014.  As I understand our
conversation, BLM has concerns over the scope of the request and has estimated a
response time of 12-14 months (please confirm that this is accurate).  This comes
as some surprise to SJCA since the latest GRRA FOIAs are follow-ups on a FOIA
that BLM responded to in settlement of recent litigation.  ***It was my
understanding that this FOIA would simply require BLM to supplement the
recent response with additional information starting with a search cut-off date
(December 23, 2013) used in the litigation settlement***.  To the extent that
additional categories of information are requested, it is my understanding that the
requested information and data requests should be readily available as routine
inventories/monitoring/evaluation.  I can't imagine any circumstances that would
justify a 12-14 month response deadline, particularly where the Environmental
Assessment involves a 15-day comment period.

It would be helpful if you would provide a written explanation so SJCA staff and our attorney can better understand the basis for the 12-14 month response estimate. It is my sense, from our call today, that the Interior Solicitor is already working on this request, so it appears that BLM is treating this matter as involving potential litigation.

Once we review your outline of the categories of documents and the reasoning behind the extended response time, we would be amenable to discuss the scope of the request, proposals for specific deadlines for compliance, and perhaps a staged release for our latest GRRA FOIAs. Once we receive your explanation of the 12-14 month estimate, we should discuss a time for a call, and whether or not it should include our respective attorneys.

Thank you,

Mike

(Doc. 72-24, Def.'s Ex. C-25 at BLM_0001021-22, emphasis added).

The response to that email came from Gary Torres, the FFO manager. In an email to

Eisenfeld dated February 25, 2014, Torres stated:

Mike:
....

We did have some concerns regarding the scope of the FOIA and we did not want to assume that your request was limited to an extension of the previous FOIAs regarding the Glade planning effort. Some of the terms of your request such as "all monitoring data used by BLM to comply with the monitoring responsibilities of the 2003 Resource Management Plan" could be interpreted as involving areas outside of the Glade Run Recreation Area. If your request is directed toward information relevant to the Glade, then a more timely response is possible.

***We appreciate your added clarity that "this FOIA would simply require BLM to supplement the recent response with additional information starting with the cut-off date (December 23, 2013) used in the litigation settlement."***

The requested information and data is not necessarily readily available because such inventories and data reside in different places and formats and may require more than a routine search depending on the scope of your request. For example, much of the cultural information is not available to the public, some of the oil and gas information could be proprietary, monitoring data in grazing files exists but is not in a tidy, summary format. In addition, time is also required to copy and

index the information.  If your FOIA is focused primarily on discovering data relevant to the Glade planning effort and an extension of the previous FOIA, that will help us direct our efforts and reduce the time.

We remain committed to working with SJCA and the public and we want to ensure that we are responding accurately to your request.  As you know, we have already responded to two other FOIAs regarding this planning effort with nearly 11,000 pages provided to SJCA.  We don't want to waste employees' time or cause any delay by responding to things you don't want; we are trying to ensure that they work on providing you the information you need, so your added clarity is much appreciated.

Lastly, normally the Solicitor's Office is only involved in FOIAs to the extent that Solicitors review any documents withheld by the BLM under any applicable exception to FOIA.  The Solicitor is generally not otherwise involved.  We have asked the Solicitor's assistance regarding your Information Quality Act Request and will be responding to it soon.

Hopefully we can schedule a call and clarify what you information you need.

Gary Torres

(Doc. 72-20, Def.'s Ex. B-2 at BLM_ 0007609-10, emphasis added).

Although the apparent purpose of the communications between the BLM representatives and Eisenfeld was to clarify the scope of SJCA's requests, there were continuing failures of communication and misunderstandings.  The BLM considered the February 13, 2014 request ("the First Request") to be a distinct request from the February 19, 2014 request ("the Second Request").  That was not SJCA's view.  With respect to the Second Request, the BLM understood Eisenfeld's February 24 email to mean that the agency needed to produce records only for a period beginning December 23, 2013.  As shown below, Eisenfeld did not intend that all the enumerated requests would be limited to that time period.

Before February 24, 2014 (the date of the Evans' phone call with Eisenfeld regarding the Second Request), Alleman had already collected records that the agency considered responsive to the First Request.

The collection process involved the use of the BLM's shared computer servers. (Doc. 72-2, Def.'s Ex. 2, Alleman Decl. ¶ 16).[2] Employees with responsive records could set up individualized folders for the collection of their responsive records. Documents in hard copy form could be scanned and stored electronically in those folders. Alleman also set up an electronic folder on the BLM's internal SharePoint site for employees in the New Mexico state office to use when providing their responsive documents. Documents located in both sites were accessible to the New Mexico State Office FOIA coordinators and Alleman. (*Id.*; *see also* Doc. 72-1, Def.'s Ex. 1, Vigil Decl. ¶ 29).[3]

Using that shared computer filing system, records that the agency employees considered responsive to the First Request were collected and downloaded to one CD, which Alleman sent on February 21, 2014, to the BLM's New Mexico State Office for review by Vigil. (Alleman Decl. ¶ 18). Vigil's responsibilities include making decisions about whether to withhold documents or information pursuant to one of FOIA's exemptions. (Vigil Decl. ¶ 30).

---

[2]Unless otherwise stated, references to the Alleman Declaration refer to Alleman's declaration dated April 10, 2017. Alleman submitted a second declaration dated May 17, 2018, attached as Exhibit 3 to Defendant's response to Plaintiff's cross-motion for summary judgment.

[3]Eileen Vigil's last name is now Chavez. For consistency, this order refers to her as Vigil. Her declaration (which she made under the name Eileen Chavez) is identified as "Vigil Decl." Unless a different date is stated, "Vigil Decl." refers to her declaration dated April 5, 2017.

To gather records responsive to the Second Request, Alleman sent an email on February 27, 2014 to thirty BLM employees, informing them that the office had received another FOIA related to the Glade. Alleman's email described categories of documents corresponding to the February 19 request and asked that the email recipients provide "any information as it related to [those categories] as collected from DECEMBER 23, 2013 to the PRESENT." (Doc. 72-21, Def.'s Ex. C-6 at BLM_0007607-08). She also asked Evans and another employee to forward her email request to those employees in the State Office who may have information related to this FOIA. Alleman's email asked that responsive documents be provided by March 7, 2014.

On March 3, 2014, the BLM produced to SJCA a disk that contained 2,940 pages of records responsive to the First Request. The BLM's cover letter described documents that had been withheld or partially withheld under FOIA exemptions and notified SJCA of the right to an administrative appeal and the deadline for such an appeal. (Doc. 72-18, Def.'s Ex. A-4 at BLM_0005779-83).[4]

In a letter dated March 5, 2014 from State Director Jesse J. Juen to SJCA, the BLM formally acknowledged receipt of the Second Request and stated that it did not qualify for expedited processing. (Doc. 72-18, Def.'s Ex. A-5 at BLM_0005789-92). That letter also referenced Eisenfeld's February 24, 2014 email to Evans, quoting the excerpt of that email which stated "this FOIA would simply require BLM to supplement the recent response with

---

[4]After receiving that letter, SJCA did not file an administrative appeal. The BLM had moved for dismissal of part of the plaintiff's first claim, arguing that the plaintiff's failure to exhaust administrative remedies precluded it from complaining about the BLM's response to the Plaintiff's First 2014 FOIA request. During oral argument on July 24, 2018, the defendant's counsel confirmed that the BLM has withdrawn its defense of failure to exhaust administrative remedies.

additional information starting with the search cut-off date (December 23, 2013) used in the litigation settlement."

When Eisenfeld received the BLM's letter dated March 5, 2014, he did not immediately inform the BLM that it had misunderstood the scope of SJCA's request.

BLM employees who received Alleman's email regarding the Second Request had been instructed to provide their responsive documents by March 7, 2014, by copying (or scanning) them to folders on the shared computer servers or BLM's internal SharePoint site. Documents that the employees provided were consolidated on a compact disk, which Alleman sent to Vigil on March 7, 2014. (Alleman Decl. ¶¶ 24-25). Vigil then reviewed the documents on that CD and made determinations about whether FOIA exemptions applied.

On March 12, 2014, the BLM provided SJCA with a written response to the Second Request, along with a compact disk containing responsive records. (Vigil Decl. ¶ 10; and Doc. 72-18, Def.'s Ex. A-6 at BLM_0005063-66). The BLM's cover letter dated March 12, 2014, listed the seven categories of records described in SJCA's Second Request, and stated whether documents had been produced or did not exist for the time period requested (i.e. using December 23, 2013 as the starting date). For some categories, such as "minimization criteria" and certain right-of-way information, the BLM's letter referenced websites, and stated that certain requested information was publicly available. The letter generally described documents that had been withheld pursuant to exemptions. The letter notified SJCA of its right to an administrative appeal and the deadline for such an appeal.[5]

---

[5]The SJCA did not file an administrative appeal after receiving that letter. See note 4 above regarding the defendant's withdrawal of its administrative exhaustion defense.

On April 10, 2014, Eisenfeld wrote to Vigil, stating that the BLM had misunderstood the scope of SJCA's February 19, 2014 Request. Eisenfeld's April 10, 2014 letter stated, *inter alia*:

> To be clear, the May 1, 2013 FOIA request was a request concerning the [Glade Run Recreation Area Environmental Assessment]. The February 19, 2014 FOIA request sought data that should have been used during the preparation of the GRRA EA, but was not prepared specifically for preparation of the GRRA EA. The February 19, 2014 request specifically requested monitoring, surface disturbance, travel management, minimization, land health standards data that BLM should have documented in public records going back to 2004 (a year after the 2003 RMP was released. [sic]

(Doc. 72-18, Def.'s Ex. A-7 at BLM_0002784-86).

Vigil called Eisenfeld that same day and asked whether he had received the BLM's response dated March 12, 2014. He confirmed that he had, and told her that the BLM's response was incomplete. (Vigil Decl. ¶ 48).

Vigil consulted with the FFO about SJCA's April 10, 2014 letter. (Vigil Decl. ¶¶ 50-51). Alleman expressed her concern that the term "monitoring data" could be read to encompass all aspects of the work of the FFO, including oil and gas operations; salable mineral removal; recreation; cultural; botanical; and a wide range of other renewable and non-renewable resources. (Alleman Decl. ¶ 30.) In an email to Vigil and Yeager dated May 1, 2014, Alleman stated, "We are still trying to wrap our heads around what exactly SJCA is requesting other than all documents in the entire [field office]." (Doc. 72-20, Def.'s Ex. B-6). Alleman told Vigil that the FFO believed the request would implicate a large number of documents, and it would take approximately 12-18 months to process responsive documents.

In a letter to SJCA dated May 6, 2014, signed by Jesse Juen, the State Director of the BLM's New Mexico Office, the BLM told SJCA that the agency was still gathering information responsive to SJCA's letter of April 10, 2014. (Doc. 72-18, Def.'s Ex. A-8 at BLM_0000875-

76).  Juen's letter stated, "we are not clear as to exactly what you are requesting," and suggested

a meeting to discuss the scope of the SJCA's request.  (*Id.*)

SJCA rejected the BLM's invitation to meet.  (Doc. 72-15, Def.'s Ex. 15, Eisenfeld Dep.

121:5-126:18).  Eisenfeld responded by letter dated May 14, 2014 (transmitted by email),

stating:

> Dear State Director Juen:
>
> Thank you for your May 6, 2014 letter on the Glade Run Recreation Area.  San
> Juan Citizens Alliance (*SJCA*) appreciates your confirmation that the BLM does
> not intend to respond to the request, as written.  The BLM characterization of the
> request as "overly broad and burdensome" confirms that informal negotiation is
> futile, and would only cause further delay.
>
> San Juan Citizens Alliance looks forward to either a response to the FOIA or a
> written proposal that could avoid litigation designed to both ensure a prompt and
> complete response to this request and to remedy the Farmington Field Office's
> practice of violating SJCA's FOIA rights by engaging in arbitrary and capricious
> "clarification" requests. . . .

(Doc. 72-20, Def.'s Ex. B-8 at BLM_0000981-82).

On July 11, 2014, Torres spoke with Eisenfeld about the SJCA's FOIA request and other

matters.  Torres summarized that conversation in an email to Vigil, Alleman, and others, stating

in pertinent part:

- His FOIA is only for the Glade

- The time period for the FOIA is from the 2003 [Resource Management
  Plan] to current.  However he explained that he is trying to find data that
  BLM has or used documenting activities out in the Glade.  This would be
  any monitoring data that we have.

- Of particular interest are things like documentation of unauthorized
  roads/routes, trash, mineral development, or other monitoring (patrol logs,
  grazing monitoring out in the Glade, etc)

- I explained that this will take some time, but we would send information periodically (approximately monthly) and he was fine with that idea.

- I explained that we would get the more recent information (readily available) information first and then work on other data that my not be so readily accessible.

( Doc. 72-20, Def.'s Ex. B-9 at BLM_0004999-5000).

In a letter from State Director Juen to Eisenfeld dated July 24, 2014, the BLM told SJCA that the agency was treating his letter dated April 10, 2014 as a new FOIA request. (Doc. 72-19, Def.'s Ex. A-9 at BLM_0002791-92). Although the BLM characterized SJCA's April 10, 2014 letter as a new FOIA request ("the Third Request), the BLM acknowledges that it did not provide a timely initial response to this request.

The BLM's July 24, 2014 letter summarized the BLM's understanding of Eisenfeld's representations to Torres regarding the scope of the request and their agreement regarding the production schedule. The letter also stated "[b]ased on your clarification and because of the voluminous and complex challenges with processing your request, we are anticipating a final response to be provided on or before July 13, 2015," and "we will provide you any responsive documents we may find, in regular installments beginning September 1, 2014." (*Id.*)

It is undisputed that Eisenfeld agreed to a production schedule of monthly releases of documents. (Eisenfeld Dep. 127:6-128:3).

The BLM did not start the search process anew. The BLM shows only that Alleman "believes" that sometime after the July clarification of the SJCA's FOIA requests, "one of the FFO supervisors announced in an all-staff meeting that all FFO employees who had records relating to the Glade dating back to 2003, should provide those documents to [Alleman] through the developed electronic process." (Alleman Decl. ¶ 38).

In July 2014, after Torres spoke with Eisenfeld, the primary focus of the BLM's search efforts apparently was the agency's oil and gas files, which were voluminous and were considered "monitoring" data. (*See* Alleman Decl. ¶ 39). The decision had been made to release all files for wells. (*Id*. ¶ 34). An oil and gas database known as AFMSS was used to generate a report of oil and gas activities in the Glade, and that report was used as the baseline for collecting responsive well file records. (*Id.* ¶39).

Maureen Joe ("Joe") is an Assistant Field Manager in the BLM's Farmington Field Office. (Doc. 72-3, Def.'s Ex. A-3, Joe Decl.). On August 25, 2014, Alleman sent an e-mail to Joe updating her about the status of the response to SJCA's FOIA request. (Doc. 72-22, Def.'s Ex. C-12 at BLM_0004989). Alleman told Joe that she (Alleman) had sent a batch of responsive documents to Vigil for review to meet the deadline for the first of the monthly productions. In addition, Alleman had begun processing more documents for the submission due on October 1. (Alleman Decl. ¶ 40).

The BLM provided the first installment of responsive records to Plaintiff on September 2, 2014. (Doc. 72-19, Def.'s Ex. A-10 at BLM_0000879-82).

On September 7, 2014, Alleman left the FFO to begin a new position with the BLM office in Boise. Alleman states in her declaration that before she left the FFO, she checked to ensure that other new non-well file documents were collected and included in the documents sent to Vigil on August 25, 2014, for release to SJCA with the first installment. (Alleman Decl. ¶ 42).

Upon Alleman's departure, Joe assumed responsibility for ensuring that the monthly deliveries of responsive documents were being sent according to the agreed schedule. Three

employees were assigned to the perform the scanning duties on a rotating basis. (Joe Decl. ¶ 15). The FFO continued submitting responsive documents to Vigil for her review on a monthly basis. (*Id.* ¶¶ 16-17 & 22-23). The record is not entirely clear, but it appears that those scanning duties involved scanning oil and gas documents – i.e., the well files.

On September 14, 2014, BLM released to the public the Glade Run Resource Management Plan Amendment/Environmental Assessment. The deadline for public comment was October 14, 2014.

The BLM provided another installment of responsive records to SJCA on October 6, 2014. (Doc. 72-19, Def.'s Ex. A-11 at BLM_0000883).

SJCA filed this action against the BLM on October 10, 2014, claiming that the BLM had unlawfully withheld agency records in response to its 2014 Glade FOIA request and had engaged in a pattern and practice of violating SJCA's FOIA rights.

The BLM continued producing documents in stages, pursuant to the agreed schedule. As the FFO sent batches of documents to Vigil, she reviewed them and prepared interim response letters to accompany those document productions. (*Id.*) The BLM made monthly productions under cover letters dated November 21, 2014, and December 29, 2014 (Doc. 72-19, Def.'s Exs. A-12 &13 at BLM_0003051-54 & BLM_0000102-104).

The plaintiff questioned the sufficiency of the BLM's productions of documents unrelated to oil and gas.

Jeff Tafoya, a Supervisory Natural Resource Specialist under Joe's supervision, assisted Joe in reviewing whether BLM employees had produced all their responsive documents. (Doc. 72-4, Def.'s Ex. 4, Tafoya Decl.). He says that in December 2014, he asked range staff,

biologists, archaeologists, the recreation planner, and the botanist to ensure that they had responded to the prior Glade FOIA requests. At Joe's direction, he met with the FFO's cultural staff in early January 2015, and they identified additional responsive cultural records. Those records was provided to Vigil by January 22, 2015. (Tafoya Decl. ¶¶ 7-8).

Vigil sent the next monthly installment to the plaintiff on February 3, 2015 (Doc. 72-19, Def.'s Ex. A-14 at BLM_0007327-31).

A scheduling conference was held by the Court on February 12, 2015, at which time there was discussion of the chronology of the agency's productions and provision of a *Vaughn* index. (Doc. 28, Courtroom minutes).[6]

Vigil sent the plaintiff another batch of documents on March 5, 2015. (Doc. 72-19, Def.'s Ex. A-15 at BLM_0000110-13).

The plaintiff's counsel and BLM's litigation counsel communicated by telephone on March 17, 2017 about the BLM's production. (*See* Joe Decl. ¶ 35). Plaintiff's counsel asked the BLM to confirm whether any additional documents existed in the following categories: (1) documents regarding ground surface disturbance; (2) travel management decisions; (3) 5-year annual reports regarding monitoring data; and (4) cultural information. It was agreed that the BLM would complete its release of final documents on or before April 20, 2015, and would follow-up on the specific items that the plaintiff requested on or before that same date.

---

[6]A *Vaughn* index is a document that describes each withheld record or deletion from a released record and identifies which FOIA exemption supports the agency's nondisclosure decision. Its purpose is to provide a basis for evaluating an agency's claimed exemptions. *See Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973).

In response to the plaintiff's inquiries, Joe asked Tafoya and another BLM employee (Doug McKim) to investigate whether additional records existed, and if so, to collect such records. (Joe Decl. ¶ 35).

On March 19, 2015, the FFO provided an additional 10,452 pages of documents to Vigil for her review. (*Id.* ¶ 36). Those documents included records pertaining to the FFO's 2003 Resource Management Plan 5-year review; oil and gas records, travel and transportation; riparian assessment; raptor and bald eagle survey; and weeds inventory. (*Id.*) On March 23, 2015, Joe provided Vigil with a 2008 Farmington RMP Final Evaluation Report for inclusion in the responsive documents.

Vigil reviewed those records, and on April 13, 2015, the BLM provided what it considered to be the final installment of responsive records. (Doc. 72-19, Def.'s Ex. A-16 at BLM_0000526-31).

The BLM released a total of 40,152 pages of records in response to the plaintiff's three 2014 Glade FOIA Requests. (Vigil Decl. ¶ 21).[7]

The plaintiff still questioned the adequacy of the agency's search and the completeness of its production.

At a Court status conference on July 14, 2015, there was discussion of whether the BLM had fully complied with the plaintiff's requests. The Court ordered the BLM to provide a *Vaughn* index and declarations verifying the non-existence of records. (Doc. 34, courtroom

---

[7]Vigil states that "many of the 9,487 pages of records released in response to the 2013 Glade FOIA request would have also been responsive to SJCA's 2014 Glade FOIAs, but were not released in response to the [2014] Glade FOIAs because they had already been produced in response to the 2013 Glade FOIA request." (Vigil Decl. ¶ 23).

minutes). It was agreed that the BLM would confirm the existence or non-existence of the following eight categories of documents:

1. The Farmington Resource Management Plan Final Evaluation Report due in 2013;

2. A database for compliance with the Resource Management Plan regarding new well pads and rights-of-way;

3. 2010 era Two-Year RMP Evaluation following and identified in the Farmington RMP, Farmington Field Office, BLM New Mexico, Final Evaluation Report, September 2008;

4. Geo Database records for the travel management plan;

5. Land health standard determinations and sustained yield data for the Glade Run Recreation Area;

6. Records relating to rights of way that are not for solar and wind energy projects;

7. Plan Implementation Strategy (Implement, Monitor, and Evaluate RMP) per BLM's Washington Office Instruction Memorandum (2008);

8. Monitoring protocols for tracking management actions and annual reports on the status of implementing the RMP and its effectiveness in meeting plan goals and objectives.

To address the existence or non-existence of records, the BLM provided declarations of Vigil and Joe dated July 23, 2015 (Docs. 35-1 and 35-2). A *Vaughn* index was provided.

The plaintiff complained that Vigil's and Joe's declarations were not sufficient and did not comply with the Court's order. In the amended complaint filed August 20, 2015 (Doc. 35), the plaintiff added a claim of contempt (the third claim for relief) against Vigil and Joe, alleging their declarations do not comply with the Court's July 14, 2015 order and seeking contempt remedies under FOIA. *See* 5 U.S.C. § 552(a)(4)(F)(i).

In 2016, the BLM conducted an electronic search for email records created during the agency's response to the 2014 Glade FOIA requests.  (*See* Doc. 72-6, Def.'s Ex. 6 Irish Decl.).

The Court held a motions hearing on June 9, 2016 to address the status of discovery and the BLM's request to amend the scheduling order.  (*See* Doc. 53, Hrg. Tr.)  At another status conference held on February 10, 2017, the plaintiff indicated that discovery was complete and requested a trial setting.  The BLM suggested determination on summary judgment.

The BLM moved for summary judgment, seeking dismissal of the plaintiff's first claim and third claims for relief.  (Doc. 72).  The plaintiff opposed the motion, arguing that the BLM had unreasonably narrowed Plaintiff's requests and that the search was flawed because the BLM failed to document its searches and did not establish an ending cut-off date for the search.  (Doc. 75).  Plaintiff also challenged the agency's withholding of redacted portions of certain records identified in the *Vaughn* index.

The Court heard argument of counsel on November 8, 2017.  (*See* Doc. 84, Hrg. Tr.)  Due to ongoing questions about the adequacy of the BLM's search and production, the plaintiff was provided an opportunity to serve written interrogatories.  The plaintiff did so, and the BLM responded.  The BLM's discovery responses included a spreadsheet that categorized documents that the BLM had produced to the plaintiff in response to its Glade FOIA Requests.

In a status report dated April 16, 2018 (Doc. 88), the plaintiff informed the Court that although it considered the BLM's discovery responses to be unsatisfactory, the plaintiff did not intend to conduct further discovery and or move for sanctions pursuant to Fed. R. Civ. P. 37.

On April 26, 2018, the plaintiff filed a cross-motion for summary judgment seeking judgment in its favor on claims one and three.  (Doc. 89).  The plaintiff argues that the record

shows only that the BLM conducted a series of ad hoc searches with no established methodology, and that its search methods were flawed because it did not document its searches and did not establish an ending cut-off date for them. The plaintiff also argues that the record evidence establishes that the Vigil and Joe declarations dated July 23, 2015, were signed without their personal knowledge of the matters stated in the declarations and without conducting inquiry into whether or not certain categories of documents existed or had been produced previously.

The BLM opposed the plaintiff's cross-motion and supplemented its earlier motion for summary judgment by providing additional exhibits. (Doc. 92).

The Court heard argument of counsel on July 24, 2018.

Some issues have become moot since the defendant's motion for summary judgment was filed and briefed in 2017. As set forth above, the defendant no longer is asserting the defense of failure to exhaust administrative remedies.

There appears to be no dispute regarding the defendant's withholding of any documents pursuant to FOIA's exemptions. The plaintiff had complained of the defendant's failure to disclose complete, unredacted versions of three documents. That dispute is moot because the documents have since been released to the plaintiff in an unredacted form. (*See* Ex. 4 to Def.'s resp. to Pl.'s mot. for summ. j.)

With respect to the First Claim for Relief, the issue is whether the BLM has carried its burden of showing that its search for responsive documents was "reasonable in scope and intensity." *Trentadue v. FBI*, 572 F.3d 794, 797 (10th Cir. 2009). "The general rule under FOIA is that a person is entitled to copies of a federal agency's records upon making a request that

'reasonably describes such records' and that complies with required procedures for such requests." *Id.* (quoting 5 U.S.C. § 552(a)(3)(A)(i)). The adequacy of the agency's search is determined under a standard of reasonableness, which is dependent upon the circumstances of the case. *Trentadue*, 572 F.3d at 797. That is, the FOIA requires requestors to make a reasonable requests of the agency and that the agency make a reasonable search to respond to the request. On complaint, the district court has jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

In this case neither party's conduct can be determined to have been reasonable. The assumption underlying the FOIA is that the requestor and agency act cooperatively. That appears to have been the case when the prior lawsuit was settled. It may be that Eisenfeld was irritated by the short comment period for the Revised Plan. For whatever reason the tone of the First Request was abrupt with no explanation for asking for the broad range of records going back to May, 2013, given that the earlier case was dismissed reflecting satisfaction with the production made pursuant to Settlement Agreement. Eisenfeld's posture became increasingly adversarial, refusing to meet with Evans and sending the Third Request on April 10, 2014, that requested a broad range of data going back to 2004, the year after the 2003 RMP, asserting that those data "should have been used during the preparation of the GRRA EA, but was not prepared specifically" for that preparation.

Put simply, each party has the burden of proof showing reasonableness and neither party has met that burden. There is no basis for comparing reasonableness. There is some logic to the plaintiff's position that because the BLM did not record the methodology and the procedures

actually followed in the searches made there is no way to know whether searches were adequate and all responsive records produced. Accordingly, to be certain the relief requested is to start over with specific requirements for a new search. That is impractical. Not all of the personnel involved in the planning and search are still in the same positions. It would be an extreme burden on the agency to interrupt what their present tasks are, including a more recent FOIA request from SJCA.

The plaintiff's First Claim for Relief is resolved by denying both motions. Both are denied because neither party has shown that the opposing party has been more unreasonable. This is a case of equal fault. The Second Claim for Relief has been held in abeyance pursuant to this Court's stay order. The record of communications produced with these motions suggests that there may be merit in proceeding with it.

In the Third Claim for Relief in the Amended Complaint, SJCA asks for an order finding Vigil and Joe in contempt because of their declarations submitted in response to this Court's order of July 14, 2015, which it claims were ambiguous and unresponsive. It has become apparent that both agency and litigation counsel participated in drafting those responses. Both declarants have acknowledged in depositions that some language used was not from them. The plaintiff has not shown sufficient support for contempt orders either by statute or the Court's inherent authority. Summary judgment on this claim is granted, dismissing that claim and correspondingly denied on the cross-motion.

The record submitted on these cross-motions for summary judgment is related to and may be some support for the pattern and practice claim – the Second Claim for Relief. That claim identifies other FOIA requests that were allegedly delayed or denied in an arbitrary and

capricious manner.  There are allegations that the FFO has treated SJCA's requests differently from those made by others and that the office has been influenced by a relationship with industry.  That pattern and practice claim will now go forward and a status conference will be convened to discuss and establish procedures to be followed.

Accordingly, it is

ORDERED that the defendant's motion for summary judgment [Doc. 72] is denied as to claim one and granted with respect to the third claim which is dismissed.  It is

FURTHER ORDERED that the plaintiff's cross-motion for summary judgment [Doc. 89] is denied, and it is

FURTHER ORDERED that the defendant's motion for leave to file updated motion for summary judgment [Doc. 90] is moot.

Counsel shall contact the Court for setting a status conference.

Dated:  August 29, 2018

BY THE COURT:
s/Richard P. Matsch
_____

Richard P. Matsch, Senior Judge